******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

FRAUENGLASS AND ASSOCIATES, LLC *v.*
HELEN ENAGBARE
(AC 34985)

Lavine, Bear and West, Js.

*Argued January 16—officially released April 1, 2014*

(Appeal from Superior Court, judicial district of
Hartford, Hon. Richard M. Rittenband, judge trial
referee.)

*Helen Enagbare*, self-represented, the appellant
(defendant).

*Robert H. Weinstein*, for the appellee (plaintiff).

*Opinion*

LAVINE, J. In this action for the collection of legal fees, the self-represented defendant, Helen Enagbare, appeals from the judgment of the trial court rendered pursuant to the findings of an attorney fact finder in favor of the plaintiff, Frauenglass & Associates, LLC. On appeal, the defendant claims that the court improperly (1) failed to remand the matter to the fact finder to consider her counterclaim, (2) concluded that her counterclaim and special defenses were not relevant to its judgment, (3) exhibited bias toward her,[1] and (4) affirmed the fact finder's report, as it is contrary to the evidence. We affirm the judgment of the trial court.

The following procedural history underlies the present appeal. In November, 2009, the plaintiff filed an application for a prejudgment remedy. On February 20, 2010, the court, *Graham*, *J.*, granted the prejudgment remedy in the amount of $20,176.93. The plaintiff then served the defendant with a summons and complaint sounding in breach of contract, quantum meruit, and unjust enrichment stemming from unpaid legal fees. The defendant denied the material allegations of the complaint and pleaded five special defenses.

The matter was referred to an attorney fact finder for a hearing.[2] The fact finding hearing was to begin on May 16, 2011, but on May 13, 2011, the defendant filed a counterclaim.[3] The plaintiff objected to the counterclaim's being filed on the eve of trial without the defendant's having secured the permission of the court, as required by the rules of practice. See Practice Book §§ 10-64 and 10-60. The fact-finding hearing, however, proceeded as scheduled. Our review of the transcript discloses that the plaintiff presented its case through the testimony of Lloyd Frauenglass, its sole member. Frauenglass' direct testimony was of short duration. The defendant cross-examined Frauenglass for the remainder of the day and again on August 29, 2011. After a brief redirect examination of Frauenglass, the plaintiff rested. The defendant called two witnesses: Attorney Donna D. Convicer, an associate in the plaintiff law firm, and herself. Convicer testified on direct examination for the balance of August 29, 2011, and for most of the day on October 24, 2011. The defendant then testified under direct examination for the remainder of October 24, 2011, and again on January 8, 2012. The plaintiff briefly cross-examined the defendant. The defendant testified on redirect and recross-examination. Frauenglass offered brief rebuttal testimony.

The fact finder ordered the parties to file simultaneous briefs on or before February 10, 2012. On that date, the defendant filed a request for an extension of time to file her brief indicating that the fact finder had not advised the defendant's counsel as to whether her counterclaim was accepted as operative. The request for

a continuance was denied. The fact finder issued his findings of fact on June 8, 2012. In his finding of facts, the fact finder stated that the matter was heard over several days and that both parties were represented by counsel. The plaintiff put nine documents into evidence, and the defendant put four documents into evidence.

The fact finder found that the plaintiff is a law firm of which Frauenglass is the sole member and Convicer was an associate. The defendant had retained the plaintiff to represent her in what the defendant anticipated would be a nasty divorce and child custody battle. The fact finder found that the defendant ostensibly wished to be represented by a female attorney but apparently was more sensitive to cost. She had discussed her case with one other attorney before approaching the plaintiff.

The defendant signed a retainer agreement (agreement) and gave the plaintiff a retainer of $7780 on October 8, 2008. Convicer signed the agreement on behalf of the plaintiff. Pursuant to the fee schedule in the agreement, Convicer's time was billed at $250 per hour, and Frauenglass' time was billed at $375 per hour. Although the defendant claimed that she wanted only a female attorney to represent her, the fact finder found that her desire appears largely to have been driven by cost, as Convicer's hourly rate was approximately two-thirds that of Frauenglass' rate. The agreement does not state that only Convicer was to represent the defendant. Moreover, after terminating the plaintiff's representation, the defendant retained a male attorney.

The defendant's retainer of $7780 was credited against the fees and costs she incurred during the course of the plaintiff's representation. On February 7, 2009, the defendant terminated the services of the plaintiff. At that time, the defendant owed the plaintiff $21,551.93 for legal fees and costs. The fact finder found that the case was complicated by issues of Nigerian law, child custody, and the fact that the defendant's husband controlled all of the couple's assets. The defendant feared that her husband would cut off financial support if he discovered that she was divorcing him and seeking custody of their children. At one point, the defendant's husband filed a motion to dismiss the defendant's dissolution action, claiming that he and the defendant had been divorced in Nigeria. The fact finder found that the plaintiff researched and successfully argued that issue in the dissolution action. During the fact-finding hearing, the defendant testified that she understood the agreement and had signed it voluntarily.

The fact finder found that as the divorce litigation proceeded, the defendant's litigation desires changed. At first she wanted a divorce and custody of her children, later she wanted a separation from her husband and custody of their children, and still later she was willing to let her husband have custody of the children.

By late March, 2009, a month and a half after she had terminated the plaintiff's representation and had retained new counsel, the defendant again was residing with her husband. She was residing with her husband at the time of the hearing. Importantly, the fact finder found that the defendant's gradual change of heart over the divorce and custody issues was fueling her retrospective claims that the plaintiff did not follow her instructions and "over-lawyered' the case, and that Frauenglass, who had a higher hourly billing rate, did work that the defendant wanted Convicer to do. The fact finder found, however, that the defendant voluntarily had retained the plaintiff law firm, not solely Convicer.

The fact finder concluded that the present action is actually a fee dispute. The agreement provides that in such circumstances, and at the defendant's request, the parties would submit the dispute to the fee dispute committee of the Connecticut Bar Association. The defendant failed to seek that avenue of redress. The fact finder concluded that the parties entered into an agreement, and the plaintiff represented the defendant pursuant to the agreement. In addition, the defendant apparently was satisfied with the representation. When it came time to pay the fees, however, the defendant asserted that she did not want the "quantity" or cost of the representation provided by the plaintiff.

The fact finder recommended that the court enter judgment in the amount of $21,551.93 plus $11,638.04 in interest, as provided by the agreement, for a total of $33,189.97. *The fact finder also recommended that judgment enter for the plaintiff on the defendant's counterclaim.* On June 22, 2012, the defendant filed an objection to the findings of fact on the ground that the fact finder failed to address her special defenses and counterclaim. She also stated that the fact finder failed to respond to her counsel's inquiry as to whether he had accepted the defendant's counterclaim. The defendant asked that the court remand the matter to the fact finder so that she could present evidence with respect to her counterclaim.

On August 6, 2012, the court, *Hon. Richard M. Rittenband*, judge trial referee, overruled the defendant's objection.[4] After reviewing the findings of fact, the defendant's special defenses, and her counterclaim, the court concluded that the fact finder addressed the issues raised by the defendant and specifically identified the paragraphs of the findings of fact relevant to the issues. On August 24, 2012, the court accepted the fact finder's report and rendered judgment for the plaintiff in the amount of $33,189.97.

Although she was represented by counsel at trial, the defendant filed an appeal as a self-represented party. She also filed a motion for articulation pursuant to Practice Book § 66-5, which the court granted.[5] In its

articulation, the court essentially stated that the fact finder had considered all of the issues raised in the plaintiff's complaint and the defendant's special defenses and counterclaim. The court further stated that it was not the court's function to remand a matter to a fact finder to enable a defendant to present witnesses and new evidence that should have been produced at the hearing. Moreover, the court found that the defendant was rearguing claims she had raised before the fact finder.

## I

The defendant's first claim is that the court violated her state and federal rights to due process by failing to remand the matter to the fact finder for consideration of her counterclaim. We disagree.

"In reviewing a procedural due process claim, we must first determine whether a protected liberty or property interest is involved. If it is, then we must determine the nature and extent of the process due." (Internal quotation marks omitted.) *In re Tayler F.*, 296 Conn. 524, 553, 995 A.2d 611 (2010). Here, the defendant claims that she has been deprived of property without due process of law because the court failed to remand the case to the fact finder who purportedly failed to consider her counterclaim. Whether the defendant's rights to due process were violated is governed by the balancing test set forth in *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

*Mathews* v. *Eldridge* established a three-prong balancing test to determine "what safeguards the federal constitution requires to satisfy procedural due process." (Internal quotation marks omitted.) *In re Alison M.*, 127 Conn. App. 197, 219, 15 A.3d 197 (2011). "Under this test, [t]he three factors to be considered are (1) the private interest that will be affected by the state action, (2) the risk of an erroneous deprivation of such interest, given the existing procedures, and the value of any additional or alternative procedural safeguards, and (3) the government's interest, including the fiscal and administrative burdens attendant to increased or substantive procedural requirements. . . . Due process analysis requires balancing the government's interest in existing procedures against the risk of erroneous deprivation of a private interest inherent in those procedures." (Internal quotation marks omitted.) *Barros* v. *Barros*, 309 Conn. 499, 509, 72 A.3d 367 (2013).

The defendant's appellate brief fails even to mention the balancing test applicable to her federal due process claim let alone include an analysis of the *Mathews* test as it applies to the facts of this case.[6] We conclude, therefore, that the plaintiff's claim is inadequately briefed.[7] A claim that does no more that assert a due process violation without legal analysis is deemed abandoned. See *Dubaldo Electric, LLC* v. *Montagno Con-*

*struction, Inc.*, 119 Conn. App. 423, 443–44, 988 A.2d 351 (2010). For the foregoing reason, the defendant's claim fails.

## II

The defendant's second claim concerns the court's statement that the issues alleged in her special defenses and counterclaim that were not addressed by the fact finder were irrelevant to its judgment. We do not agree with the claim.

The defendant has based her claim in part on the plaintiff's alleged violations of the rules of professional conduct in that its fees were not reasonable and that it filed motions fraudulently, manipulated its invoices for services rendered, and represented her incompetently. The defendant did not raise any of those claims of professional misconduct in the trial court.[8] This court does not review claims, such as this one, that are raised for the first time on appeal. See *Plante* v. *Charlotte Hungerford Hospital*, 300 Conn. 33, 59, 12 A.3d 885 (2011).

Within this second claim, the defendant also argues that the plaintiff overbilled her and that the fact finder did not address certain issues she raised. More specifically, the defendant argues that most of the items for which she was billed "is from work that [was] not necessary for her representation; many are work not done at all, some from work forcefully done. Only one small part of the bill is the defendant's bill."

In his discussion of the facts found, the fact finder stated that the defendant's "change of heart over the divorce and custody issues fuels her retrospective claim that the [p]laintiff did not follow her instructions, [and] 'over-lawyered' the case." He also stated that the parties had a contract whereby the plaintiff was to provide legal representation for the defendant in a divorce action. The fact finder found that the defendant apparently was satisfied with the representation provided and noted that "[o]nly now does the [d]efendant assert that she did not want the 'quantity' or cost of representation provided by the [p]laintiff."

The defendant objected to the findings of fact. In overruling the defendant's objection to the findings of fact, Judge Rittenband stated that "the [defendant] was aware of the amount owed and that the [defendant] at the time of representation found it satisfactory." See footnote 4 of this opinion. In his articulation, Judge Rittenband stated in relevant part: "The issues in the report and the conclusions made by the fact finder were made on the evidence as they pertain to those issues. The court believes that all the relevant issues were addressed by the fact finder, and the court found the fact finder's report to be reasonable based upon the evidence that he described in his report. The court found that looking at the report as a whole, all relevant

issues were addressed." The court continued: "Those points not reported by the fact finder apparently were found to be irrelevant because the fact finder did not address them in his report. The court was aware that the fact finder was aware of the special defenses and the counterclaim, and there is no evidence that he ignored them. . . . The remainder of the motion for articulation merely repeats the arguments that were made, or should have been made, before the fact finder, and it is not the province of this court to get into the same issues and decide them when the fact finder made his findings of fact. As to paragraph 5 of the motion for articulation . . . these items were all contained in the fact finder's report or deemed irrelevant. The defendant is rearguing the claims that she made before the fact finder."

On the basis of our review of the entire record, we agree with the court that the fact finder addressed all of the issues relevant to the plaintiff's cause of action, the defendant's special defenses, and her counterclaim. In fact, the fact finder ended his findings of fact with the recommendation that judgment should enter for the plaintiff on the defendant's counterclaim. We conclude that the points and arguments made by the defendant on appeal, for which she seeks another trial, are not relevant to the plaintiff's action seeking payment of its legal fees for services rendered pursuant to the agreement the defendant voluntarily entered. The defendant's claim therefore fails.

### III

The defendant's last claim is that the court abused its discretion by approving the fact finder's findings and conclusions on the issues as they are contrary to the evidence and legal conclusions. We disagree.

We first note the applicable standard of review. "[A] reviewing authority may not substitute the findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. . . . This court has articulated that attorney trial referees and fact finders share the same function . . . whose determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment by the court. . . .

"The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted;

internal quotation marks omitted.) *Meadows* v. *Higgins*, 249 Conn. 155, 162, 733 A.2d 172 (1999).

On the basis of our review of the entire record, the findings of fact, the court's ruling on the defendant's objection to the findings of fact and its articulation, we conclude that the court properly approved the findings of fact and rendered judgment for the plaintiff. The findings of fact are supported by the evidence, and the conclusions reached by the fact finder and the court are reasonably supported by the evidence. The parties entered into an agreement that included the fees charged for the attorneys in the plaintiff law firm. The defendant indicated to Convicer that she wanted to divorce her husband and to obtain custody of their children. She also indicated that the divorce would be contentious and the custody issues difficult. During the course of litigation, the defendant's spouse raised legal issues that required the plaintiff's lawyers to research the marital law of Nigeria. Also, as the litigation progressed, the defendant changed her objectives and eventually reconciled with her husband. On the basis of our review of the evidence, we cannot say that the findings of fact are clearly erroneous, or that the court erred when it rendered judgment for the plaintiff.[9]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] We decline to review the claim of judicial bias as the defendant failed to raise it in the trial court. See *Wendt* v. *Wendt*, 59 Conn. App. 656, 692, 757 A.2d 1225 (claim of judicial bias waived unless motion to disqualify filed at trial), cert. denied, 255 Conn. 918, 763 A.2d 1044 (2000).

[2] The attorney fact finder was appointed pursuant to General Statutes § 52-549o. Judge Graham denied the defendant's request to have the matter tried to the court.

[3] In her counterclaim the defendant alleged breach of contract, misrepresentation, breach of the implied covenant of good faith and fair dealing, and violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq.

[4] In ruling on the defendant's objection to the findings of fact, the court stated: "It would have been better procedure for the fact finder to get back to counsel on the counterclaim, but a review of the fact finder's report, the special defenses and the counterclaim convinces the court that the issues therein were addressed in the report and conclusions were made on the evidence as they pertained to those issues. The issue of who will represent the [defendant] was covered in [paragraph] 6 of the report; the complexity of the case covered in [paragraphs] 8 and 9. In his discussion, he finds that the [defendant] failed to take her case to the Bar [Association]. As to monthly bills, the report finds the [defendant] was aware of the amount owed and that the [defendant] at the time of representation found it satisfactory. Any points not reported were found to be either irrelevant or unimportant. The court sees no point in remanding the case to the fact finder."

[5] The defendant was dissatisfied with the court's articulation and filed a motion for review with this court. This court granted the motion for review but denied the relief requested.

[6] In her brief, the defendant cites the standard of review for claims asserting errors in the court's factual findings. Much of the defendant's brief consists of a recounting of the underlying facts and her perception of what the fact finder and trial court did or did not do. As the trial court noted, the defendant is seeking another opportunity to try her case because she is dissatisfied with the findings of fact. It is not the function of an appellate court to make factual determinations. See *State* v. *Mullins*, 288 Conn. 345, 359, 952 A.2d 784 (2008).

[7] The defendant's brief contains no analysis under the state constitution,

and we consider any such claim abandoned. See *State* v. *Garcia*, 108 Conn. App. 533, 541 n.3, 949 A.2d 499, cert. denied, 289 Conn. 916, 957 A.2d 880 (2008).

[8] Even if the defendant had raised those claims in the trial court, the court would not have been able to resolve them. Claims of attorney misconduct are considered pursuant to the rules of practice. See Practice Book § 2-1 et seq.

[9] We agree with Judge Rittenband that it would have been better procedurally for the fact finder to have responded to the request of the defendant's counsel to apprise him of the status of the defendant's counterclaim that was filed on the eve of the hearing. Despite this procedural irregularity, the findings of fact demonstrate that the fact finder considered the issues raised by the defendant in her special defenses and counterclaim. The fact finder's failure to communicate with the defendant's counsel has not resulted in any prejudice to her.

---